UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA PELTIER,

          Plaintiff,                CIVIL ACTION NO. 10-10796

        v.                   DISTRICT JUDGE GERALD E. ROSEN

MACOMB COUNTY,           MAGISTRATE JUDGE VIRGINIA M. MORGAN
MACOMB COUNTY BOARD OF
COMMISSIONERS, ERIC HERPPICH,
and CHARLES SEIDELMAN,

          Defendants.
_____/

**REPORT AND RECOMMENDATION TO**
**GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (D/E #44)**

## I. Introduction

This is a employment discrimination matter in which the *pro se* plaintiff alleges

violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.,

and the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"),

38 U.S.C. §§ 4301-4334.  The matter comes before the court on defendants' Motion for

Summary Judgment (D/E #44).  Plaintiff filed a response in opposition to that motion (D/E #54)

and defendants filed a reply to that response (D/E #60).  Pursuant to Eastern District of Michigan

Local Rule 7.1(f), the court is dispensing with oral argument and, for the reasons discussed

below, now recommends that defendants' motion be **GRANTED** and this case be closed.

## II. Background

### A. Procedural History

On February 26, 2010, plaintiff filed a complaint against defendants (D/E #1).  As stated

in that complaint, plaintiff was an employee of defendants at the Macomb County Juvenile

2:10-cv-10796-GER-LJM   Doc # 63   Filed 03/25/11   Pg 2 of 40   Pg ID 1674

Justice Center ("JJC") at all times relevant to this action until her termination in March of 2008. (Complaint, ¶ 3)  Defendants include Macomb County, the entity who operated the JJC; the Macomb County Commissioners, the elected officials who administer the JJC; Eric Herppich, the interim Director of Human Resources for Macomb County; and Charles Seidelman, the Director of the JJC.  (Complaint, ¶¶ 4-7)

In her first cause of action, plaintiff alleges that defendants violated her rights under the FMLA.  According to plaintiff, after she filed a request for FMLA leave on or about April 20, 2007, defendants violated the FMLA by depriving her of information related to her rights under the statute, interfered with and impaired the exercise of those rights, and took various adverse employment actions against plaintiff in retaliation for plaintiff exercising her rights.  (Complaint, ¶¶ 39-44)

In her second cause of action, plaintiff alleges that defendants violated her rights under USERRA.  According to plaintiff, after she put defendants on notice of her need for military leave on or about June 19, 2007, defendants violated USERRA by denying plaintiff's request for leave, making inappropriate statements regarding plaintiff's military obligations, and retaliating against plaintiff for exercising her rights under USERRA.  (Complaint, ¶¶ 45-51)

As relief, plaintiff seeks a declaration that defendants violated the FMLA and USERRA, an order directing defendants to institute and carry out policies that comply with those statutes, compensatory damages, reinstatement to the same or an equivalent position at the JJC, the correction of plaintiff's employment record, her costs and fees for bringing this litigation, and any other relief the court deems proper or just under the circumstances.  (Complaint, ¶¶ 52-60)

On October 15, 2010, defendants filed the motion for summary judgment pending before the court (D/E #44).  In that motion, defendants first argue that plaintiff has failed to establish a prima facie case arising under the FMLA because she was granted the intermittent leave she requested and the adverse employment actions she suffered were because of other, proper

-2-

reasons.  Defendants also argue that plaintiff has failed to establish a prima facie case under USERRA because plaintiff was not disciplined or discharged because of her military status. According to defendants, plaintiff was suspended for deliberately misleading defendants into believing she had attended military training she did not attend.

On December 24, 2010, plaintiff filed her response in opposition to defendants' motion for summary judgment (D/E #54).  In that response, plaintiff argues that a genuine dispute exists with respect to her FMLA claims.  According to plaintiff, her FMLA interference claim is based on the fact that she was not granted all of the intermittent leave time allowed under the act because of defendants' delay, she was disciplined for days she was absent prior to her leave being granted but which have been covered by her leave, and she was not allowed to work a less than full schedule.  Plaintiff also argues that, with respect to her FMLA retaliation claim, defendants only offer pretextual reasons for the adverse employment actions and the evidence demonstrates that plaintiff was disciplined for exercising her statutory rights.  Plaintiff further argues that a genuine dispute exists with respect to her USERRA claims where defendants improperly denied her military leave, suspended her, and terminated her employment.

On January 13, 2011, defendants filed their reply to plaintiff's response (D/E #60).  In that reply, defendants again argue that there is no dispute that plaintiff was granted an FMLA leave and never suffered any adverse employment actions because of that leave.  According to defendants, even if there were technical violations of the FMLA, those violations are insufficient to establish an FMLA claim.  Defendants further argue that plaintiff also failed to establish a claim under USERRA because there is no evidence of any negative employment action against plaintiff as a result of her military service.

### B. Facts in the Record

Plaintiff was employed as a Youth Specialist at the JJC for approximately ten years.

(Plaintiff's Affidavit, ¶ 2)[1]  The JJC, at least in part, is a detention center for youths and it requires staffing seven days a week and twenty-four hours a day.  (Plaintiff's Dep., p. 25)[2] Plaintiff was a also member of the Army National Guard from 2002 until being honorably discharged on January 23, 2008.  (Plaintiff's Dep., p. 27)  Prior to the events involved in this case, plaintiff never had any difficulties in having her requests for military leave granted or demonstrating her need for such leave.  (Plaintiff's Dep., pp. 102-103)  Similarly, plaintiff sought and received a FMLA leave without incident after giving birth to her son in 2006. (Plaintiff's Dep., pp. 61-62)

Here, plaintiff's first claims were brought under the FMLA.  According to plaintiff's affidavit:

> On or about April 20, 2007, I requested a FMLA.  I specifically stated FMLA for my son's asthma, because my son's physician recommended the leave.  My request was made to Mary Cavanaugh a secretary at the JJC who handled leave of absences.

(Plaintiff's Affidavit, ¶ 3)  Plaintiff's Attendance Notice for April 30, 2007 provided that plaintiff was absent from work and that she claimed she was on leave.  (Attendance Notices for April/May 2007; attached as Exhibit D to Defendants' Motion)

On April 30, 2007, Cavanaugh emailed plaintiff to say that she noticed on the Attendance Notice for that day that plaintiff was "claiming you are on some sort of leave."  As stated in that email, if plaintiff was on leave, then Cavanaugh needed documentation from plaintiff as soon as possible.  (Emails between Cavanaugh and Plaintiff, dated April or May 2007; attached as Exhibit C to Defendants' Motion and Exhibit C of Plaintiff's Response)

On May 1, 2007, plaintiff was also sent a letter and a Leave of Absence Request form.

---

[1]Plaintiff's Affidavit is attached as Exhibit A to her Response.

[2]Excerpts of Plaintiff's Deposition are attached as Exhibit A to Defendants' Motion for Summary Judgment.

The letter stated that the form was to be completed and returned by May 4, 2007.  (May 1, 2007 Letter; attached as Exhibit P to Defendant's Motion)  Plaintiff, in her affidavit, denied ever receiving that letter.  (Plaintiff's Affidavit, ¶ 10)

Plaintiff sent an email to Cavanaugh on May 1, 2007, stating that she had faxed "the document" over to Cavanaugh and asking what else is needed.  (Emails between Cavanaugh and Plaintiff, dated April or May 2007; attached as Exhibit C to Defendants' Motion and Exhibit C of Plaintiff's Response)  That fax was a Certification of Health Care Provider form of the United States Department of Labor.  Various portions of the form were left blank, including the part of the form where the patient is to be named if the patient is different from the employee, and the medical condition was described as "Asthma - frequent need for treatment."  (May 1, 2007 Certification Document; attached as Exhibit B to Defendants' Motion and as Exhibit 2 to Plaintiff's Affidavit)

On May 2, 2007, Cavanaugh sent an email to plaintiff providing that Human Resources had reviewed the medical documentation plaintiff had sent in and Cavanaugh had been told that more information was needed.  Specifically, Cavanaugh identified "Page 1, 5a" and "Page 3, 8c."  Cavanaugh also noted that plaintiff needed to submit a doctor's note with a diagnosis, the beginning of the family sick leave, and the ending date of the leave.  Cavanaugh further stated that, since plaintiff had been off work since April 25, 2007, "this institutes a family sick leave, not an intermittent leave."   (Emails between Cavanaugh and Plaintiff, dated April or May 2007; attached as Exhibit C to Defendants' Motion and Exhibit C of Plaintiff's Response)

On May 4, 2007, plaintiff faxed in another Certification Form, along with a physician's note.  On the cover page, plaintiff also asked Cavanaugh to email plaintiff and let plaintiff know if that was everything required.  (May 4, 2007 Certification Document; attached as Exhibit E to Defendants' Motion and as Exhibit 3 to Plaintiff's Affidavit)  The note, from a Dr. Buzenski, was an "Excuse Slip" dated May 4, 2007 and providing that an unidentified person had an

appointment in his office on May 4, 2007 and would be able to return to work on "4/25/07-5/7/07[.]"  On the bottom of the note someone wrote "Allergies and Rhinitis[.]" (May 4, 2007 Note; attached as Exhibit D to Plaintiff's Response)

On May 5, 2007, Cavanaugh emailed plaintiff, stating that she had received plaintiff's updated fax, but that the copies were illegible.  Cavanaugh asked plaintiff to bring in the originals so she could make copies.  (Emails between Cavanaugh and Plaintiff, dated April or May 2007; attached as Exhibit C to Defendants' Motion and Exhibit C of Plaintiff's Response)

Plaintiff states in her affidavit that she called Cavanaugh later that day after receiving the email.  According to plaintiff, Cavanaugh never said the certification form was illegible and, instead, only asked plaintiff for a legible doctor's note.  (Plaintiff's Affidavit, ¶ 9)  Plaintiff also states that: "Per Ms. Cavanaugh's instructions I took a copy of the doctor's note on or about May 5, 2007, and placed it in Ms. Cavanaugh's mail."  (Plaintiff's Affidavit, ¶ 9)

As provided in her Attendance Notices, plaintiff was missing work during this time period.  She was listed as a "no show" for May 1, 2007, "absent" on May 10, 2007 because she stated she could not return to work, "absent" on May 11, 2007 due to "Family Sick Until Further Notice", "no show" for May 12, 2007, "no show" for May 13, 2007, "no show" for May 14, 2007, "no show" for May 17, 2007, "absent" on May 18, 2007 after she called in sick, "absent" on May 20, 2007 after her mother called her in sick, and "other" on May 21, 2007 after stating that she was on military leave for the next couple days.  (Attendance Notices for April/May 2007; attached as Exhibit D to Defendants' Motion)  At her deposition, plaintiff acknowledged that she missed work on all those days.  (Plaintiff's Deposition, p. 78)

Plaintiff states in her affidavit that, on or about May 22, 2007, she spoke to defendant Seidelman regarding phone calls she had received from co-workers complaining about being forced to work her scheduled shift.  Plaintiff also expressed her concerns that her FMLA was not being processed correctly and that, while she wanted to work, she needed a less than full time

schedule.  As stated in the affidavit, Seidelman only responded that plaintiff's leave had not yet been approved and she needed to call in each day, regardless of whether they knew she was not coming in that day.  Seidelman also stated that no changes could be made to plaintiff's work schedule until the leave was approved.  (Plaintiff's Affidavit, ¶ 12)

Plaintiff's affidavit also provides that, during the May 22, 2007 conversation, Seidelman gave her a direct order to file her paperwork with the JJC.  (Plaintiff's Affidavit, ¶ 12) According to plaintiff, she called the JJC after that conversation and confirmed that all the paperwork necessary to process the leaves was in.  (Plaintiff's Affidavit, ¶ 13)  Plaintiff also emailed defendant Herppich and stated that she was making a formal complaint regarding the processing of her FMLA leave.  Herppich advised her to contact Lisa Weber as soon as possible so Weber could take plaintiff's complaint.  (Emails; attached as Exhibit 5 to Plaintiff's Affidavit)[3]

On May 26, 2007, plaintiff sent in a request for an intermittent leave of absence for the period of April 20, 2007 to October 20, 2007, depending on medical needs.  (May 26, 2007 Request for Leave of Absence; attached as Exhibit U to Defendants' Motion and as part of Exhibit S to Plaintiff's Response)

On May 29, 2007, plaintiff sent in a request for a leave of absence for the period of April 25, 2007 to May 19, 2007, due to an illness/injury in the immediate family.  (May 29, 2007

---

[3]Plaintiff argues in her brief that, on June 17, 2007, plaintiff spoke on the phone with Weber regarding plaintiff's complaint that her FMLA rights were being violated and that Weber asked plaintiff to come in and speak with her on June 19, 2007.  (MERC Hearing, pp. 218-220; attached as Exhibit I to Plaintiff's Response)  Plaintiff also argues that Seidelman subsequently denied plaintiff permission to meet with Weber on work hour. (June 7, 2007 and June 8, 2007 Emails; attached as Exhibit F to Plaintiff's Response)  This court would first note that the dates in plaintiff's testimony and the emails clearly conflict.  Nevertheless, it appears that the emails may have been in reference to an earlier complaint.  This court would also note that Seidelman was objecting to plaintiff's statement that she was leaving the JJC to "conduct County business at HR" when she was not approved for any such business.

Request for Leave of Absence; attached as Exhibit R to Defendants' Motion and as part of Exhibit S to Plaintiff's Response)

Both requests for a leave of absence were checked disapproved by defendant Seidelman on May 31, 2007.  (May 26, 2007 Request for Leave of Absence and May 29, 2007 Request for Leave of Absence; attached as Exhibits R and U to Defendants' Motion and as Exhibit S to Plaintiff's Response)

On June 5, 2007, Stephanie Dobson, the HR Coordinator, sent plaintiff a letter stating that, with respect to plaintiff's request for leave of absence covering the period of April 25, 2007 to May 19, 2007, the submitted physician statement did not comply with the collective bargaining agreement or personnel manual.  Specifically, the statement was missing a "Start date of incapacity" and an "Anticipated date of return to work".  Dobson also noted that "Several notes have been submitted, but the above information is still missing because notes are not legible to read clearly.  (June 5, 2007 Letters; attached as Exhibit T to Defendant's Motion)

Dobson also sent a letter to plaintiff on June 5, 2007 regarding plaintiff's request for intermittent leave from May 8, 2007 through unknown.  In that letter, Dobson stated that the submitted physician statement did not comply with the collective bargaining agreement or personnel manual because the statement was missing a "Start date of incapacity" and an "Anticipated date of return to work".  Dobson further noted that "The Department of Labor form provided on May 4, 2007 is unacceptable.  Question 5b and 8c are not answered with accurate detail to determine period of time off."  (June 5, 2007 Letters; attached as Exhibit T to Defendant's Motion and as Exhibit E to Plaintiff's Response)

On June 12, 2007, Human Resources received another Certification Form from plaintiff, dated June 11, 2007.  (June 11, 2007 Certification Form; attached as Exhibit V to Defendants' Motion and as Exhibit 7 to Plaintiff's Affidavit)  Similarly, on June 22, 2007, plaintiff faxed a portion of a Certification Form.  (June 22, 2007 Fax; attached as Exhibit BB to Defendants'

-8-

Motion)  In plaintiff's affidavit, she states that the June 22, 2007 fax was the last time she sent any documentation to her employer with respect to her FMLA leave.  (Plaintiff's Affidavit, ¶ 20)

On July 12, 2007, a number of portions of Certification Forms were stamped as received by Human Resources.  Parts of the forms are dated June 11, 2007 by the Health Care Provider and  June 12, 2007 by plaintiff, while another page is dated April 23, 2007 by the Health Care Provider and April 28, 2007 by plaintiff.  Human Resources also stamped as received on that date a Physician Disability Note identifying plaintiff's infant son as having chronic asthma and stating that plaintiff will be incapacitated from September 2006 to "Asthma is a chronic condition[.]" The physician signed the note on May 28, 2007.  (Documents Stamped as Received July 12, 2007; attached as Exhibits Y and Z to Defendants' Motion)  Plaintiff states in her affidavit that she sent in the disability note on or about April 29, 2007.  (Plaintiff's Affidavit, ¶ 16)

On July 31, 2007, the Director of Human Resources approved plaintiff's request for an intermittent leave of absence for the period of April 20, 2007 to October 20, 2007, depending on medical needs.  Additionally, the approval provided that plaintiff had forty-five days of FMLA balance remaining as of April 20, 2007.  (May 26, 2007 Request for Leave of Absence; attached as Exhibits U and X to Defendants' Motion and as part of Exhibit S to Plaintiff's Response)  In a subsequent letter, dated August 1, 2007, Dobson informed plaintiff that plaintiff's request had

been approved retroactive to April 20, 2007.  Dobson also wrote:

> In addition, even though your intermittent leave request has been approved under
> the [FMLA], the law does state "employees needing intermittent FMLA leave or
> leave on a reduced leave schedule must attempt to schedule their leave so as not
> to disrupt the employer's operation."  With this in mind, absences should be
> scheduled in advance as much as possible.  Macomb County understands there are
> emergencies, but emergencies should happen infrequently.  Your department,
> Juvenile Justice Center, has state mandated staffing regulations, therefore a 24
> hour advance notice is requested to properly staff the facility and not cause
> disruption.
>
> Furthermore, as of April 20, 2007, you have 45 FMLA days (360) available.
> Once you have exhausted these hours, please be advised you must maintain full-
> time employment status to maintain County paid healthcare benefits.  Please note
> there are no provisions of an intermittent leave of absence in you collective
> bargaining agreement.

(August 1, 2007 Letter; attached as Exhibit G to Defendants' Motion and as Exhibit J to

Plaintiff's Response)[4]

    Also on July 31, 2007, the Director of Human Resources disapproved plaintiff's request

for a leave of absence for the period of April 25, 2007 to May 19, 2007.  The only reason given

on the form was "Improper Medical."  (May 29, 2007 Request for Leave of Absence; attached as

Exhibits R and EE to Defendants' Motion and as part of Exhibit S to Plaintiff's Response)

    As discussed above, plaintiff was also a member of the Army National Guard during the

events giving rise to this action.  On May 11, 2007, the Army assigned plaintiff her training dates

for Training Year 2007.  (Memorandum; attached as Exhibit H to Defendants' Motion)

However, plaintiff subsequently requested a change in those date due to her son's father being

---

    [4]As testified to by Stephanie Dobson at a subsequent MERC hearing, there was a six
month maximum amount of time for any initial request under the collective bargaining
agreement and that is why the approval of intermittent leave specified a beginning date of April
20, 2007 and a end date of October 20, 2007.  Dobson also testified that, if plaintiff had not used
up all of her six-month FMLA time at the end of the initial period, then plaintiff could request an
extension.  (MERC Hearing, pp. 87-88; attached as Exhibit AA to Defendants' Motion)

deployed in Iraq and her son having asthma.  (Plaintiff's Affidavit, ¶ 24).  That request was approved and plaintiff was assigned the alternate training dates of August 13, 2007 to August 31, 2007.  (Personnel Action; attached as Exhibit M to Plaintiff's Response)  On June 19, 2007, plaintiff sent an email to Cavanaugh confirming those dates.  (June 19, 2007 emails; attached as Exhibit I to Defendants' Motion)

As provided in the Attendance Notice for August 12, 2007, plaintiff called in that day and said she would not be in for work, but that it was not because of her son.  Plaintiff also said that she would not be in for the next three weeks as she would be on military training. (Attendance Sheet for August 12, 2007; attached as Exhibit J to Defendants' Motion and as part of Exhibit P to Plaintiff's Response)

It is undisputed that plaintiff did not fulfill her military obligations by attending the training from August 13, 2007 to August 31.  (Plaintiff's Deposition, p. 125; Plaintiff's Affidavit, ¶ 25)  Plaintiff also did not report for work at the JJC during that time period time. (Plaintiff's Deposition, p. 108)  However, as stated in her MERC testimony and affidavit, plaintiff did attend a Loudermill hearing on August 15, 2007, for an employee who plaintiff represented as the union chairperson.  (MERC Hearing, pp. 203-204; attached as Exhibit I to Plaintiff's Response)

Accounts diverge with respect to whether plaintiff informed her supervisors at the JJC that she was not or had not attended the military training.  According to the Attendance Notices for that time period, plaintiff was marked "absent" on August 15, 2007 after calling in and stating that she is suppose to be on military duty, but since the paperwork was not processed,  the person receiving the call could pick between plaintiff's son or her car as the reason plaintiff was absent; plaintiff was a "no show" on August 16, 17, 20, 23, 24, and 25; and plaintiff was "absent on August 27, 30, and 31.  (Attendance Notices for August 2007; attached as Exhibit LL to Defendants' Motion and Exhibit P to Plaintiff's Response)  Plaintiff was noted as calling in for

August 30, 2007 to say that she would not be in and for August 31, 2007 to say that she was on military leave.  (Attendance Notices for August 2007; attached as Exhibit LL to Defendants' Motion and Exhibit P to Plaintiff's Response)

    Plaintiff states in her affidavit that she informed both the military and her employer about her inability to work and called into the JJC every single day as directed.  (Plaintiff's Affidavit, ¶ 26)  Plaintiff also maintains that, when she called in to the JJC, she told them that she was military leave, but that her son was sick and that she had FMLA leave.  (Plaintiff's Affidavit, ¶ 26)  Similarly, plaintiff also testified during the MERC Hearing that, at the August 15, 2007 Loudermill Hearing for another employee, she specifically informed JJC Assistant Director Robert Whitehead and Human Resources Coordinator Karlyn Semlow that she "was not doing, that I was, in fact, that my son was ill.[.]" (MERC Hearing, p. 203; attached as Exhibit I to Plaintiff's Response)  Plaintiff also testified that Whitehead and Semlow told her that she needed to call in every single day, so that is what plaintiff did.  (MERC Hearing, p. 274; attached as Exhibit I to Plaintiff's Response)

    In a letter to plaintiff dated August 28, 2007, Stephanie Dobson wrote that:

    On August 14, 2007, Human Resources received your request for a military leave of absence from August 31, 2007 through August 31, 2007.  Human Resources must review all leave of absences to determine eligibility.  In reviewing this request, it has been determined that the documentation we received is unacceptable to grant a military leave at this time.  Official orders indicating the requirement for your presence and indicating beginning and ending dates is required for processing a military leave.  We also need a copy of your pay statement or pay grade.

    Please forward the above information by September 7, 2007 to Macomb County Human Resources Department to further evaluate your leave status.  Failure to comply with this request may result in disciplinary action up to and including discharge.

(August 28, 2007 Letter; attached as Exhibit HH to Defendant's Motion and Exhibit Y to Plaintiff's Response)

In a letter to plaintiff dated September 11, 2007, Dobson wrote plaintiff to state that:

On August 28, 2007, we notified you that the medical statement for your leave of absence request, which started on August 13, 2007, was unacceptable under County policy.  As of today, Human Resources has not received the proper medical documentation to cover the period of August 13, 2007 to August 31, 2007.  With this in mind, your leave of absence request has been denied from August 13, 2007 through August 31, 2007.

(September 11, 2007 Letter; attached as Exhibit T to Plaintiff's Response)

That same day,  plaintiff's unit commander sent a memorandum to the JJC providing the dates she had been scheduled in August.  The memorandum also noted that plaintiff had been unable to complete her military obligations on those dates and that they were scheduled to be made up in September.  (September 11, 2007 Memorandum; attached as Exhibit X to Plaintiff's Response)

Also on September 11, 2007, defendants issued plaintiff a "Verbal Reprimand for Dock Time" noting that, for the pay of September 11, 2007, she was docked 8.0 hours for August 27, 30, and 31 of 2007 as well as 6.34 hours for September 1, 1.8 hours for September 2, 8.0 hours for September 3 and 6, and 4.4 hours for September 7, 2007.  (Verbal Reprimand and Attendance Notices, attached as Exhibit K Plaintiff's Response)  Plaintiff also attached the Attendance Notices for those dates to her brief.  Those notes provide that plaintiff was a no call, no show on August 27, 2007,called in and said she would not be in on August 30, 2007, claimed military leave on August 31, 2007, stated there was a family illness on September 1, 2007, claimed union business and a sickness on September 2, 2007, had her mother call in and say plaintiff was sick on September 3, called in sick on September 6, and left early after saying her son was sick on September 7, 2007.  (Verbal Reprimand and Attendance Notices, attached as part of Exhibit K Plaintiff's Response)

On September 17, 2007, plaintiff was also issued a "Written Reprimand - Excessive Absences" stating that "In a three month period you have accumulated ten (10) days of

unexcused absences as follows: 9/12/07, 9/6/07, 9/3/07, 9/2/07, 7/29/07, 7/28/07, 7/23/07, 7/22/07, 7/7/07, 7/7/07."  The reprimand also stated that "To date, we have not received medical excuses for any of the above absences."  (Written Reprimand and Attendance Notices, attached as part of Exhibit K Plaintiff's Response)  Plaintiff also attached the Attendance Notices for those dates to her brief and they all provide that plaintiff called in sick on the applicable date. (Written Reprimand and Attendance Notices, attached as part of Exhibit K Plaintiff's Response)

Also on September 17, 2007, Seidelman sent a memorandum to Semlow asking her to set up a Loudermill hearing to determine if plaintiff abandoned her position on August 15-17, 20-21, 23-27, 30-31, 2007.  Seidelman also stated that plaintiff "claimed military leave, but to date she has not provided documentation."  (September 17, 2007 Memorandum; attached as Exhibit W to Plaintiff's Response)

Plaintiff was informed of the hearing in a subsequent letter, dated September 28, 2007. That letter also stated that plaintiff's claims of military leave for the above dates, as well as some other dates in September, were being investigated as plaintiff had not provided documentation to regarding military leave.  (September 28, 2007 Hearing Notice; attached as Exhibit NN to Defendants' Motion and Exhibit Z to Plaintiff's Response)

The Loudermill hearing was scheduled for October 5, 2007, but it did not take place on that date.  Plaintiff asserts, in both her affidavit and during the subsequent MERC Hearing, that she spoke with Herppich on October 4, 2007 and advised him that she was unable to attend the hearing due to her military obligations.  Plaintiff also asserts that Herppich told her during that conversation that plaintiff needed to make a decision regarding her employment with the County and the military.  (Plaintiff's Affidavit, ¶ 30; MERC Hearing, pp. 240-241)

On October 15, 2007, plaintiff faxed in both a leave of absence request form and  a memorandum from plaintiff's military commander.  The request form was dated October 15,

2007 and it requested a military leave from August 13, 2007 to August 31, 2007, with an extension dates of September 17, 2007 to October 5, 2007 and October 15, 2007 to October 26, 2007. (October 15, 2007 Request for Leave of Absence; attached as Exhibit JJ to Defendants' Motion and part of Exhibit U to Plaintiff's Response) In the memorandum, dated October 14, 2007, plaintiff's commanding officer wrote that plaintiff had been unable to complete her military commitment in August and needed to make up the time in September. The memorandum also stated that plaintiff was unable to make up the dates as scheduled in September and was now scheduled for dates in October. (October 14, 2007 Memorandum; attached as Exhibit KK to Defendants' Motion and as part of Exhibit U to Plaintiff's Response)

Plaintiff also sent in a leave of absence request form dated October 18, 2007 and for the period of October 9, 2007 to October 12, 2007. (October 18, 2007 Request for Leave of Absence; attached as part of Exhibit U to Plaintiff's Response) That request form was accompanied by a memorandum from plaintiff's commanding officer as well. (October 16, 2007 Memorandum; attached as part of Exhibit U to Plaintiff's Response)

On October 30, 2007 and December 7, 2007, the Macomb County Human Resources Department received letters from the military providing the dates plaintiff had attended military training in 2007. Both letters provided that plaintiff did not attend any military training in August of 2007. (October 30, 2007 and December 7, 2007 Letters; attached as Exhibit L to Defendants' Motion)

In a letter dated November 8, 2007, Seidelman wrote plaintiff and stated that a Loudermill Hearing had been scheduled in order to investigate plaintiff's claims for military leave in August and September of 2007. Seidelman also wrote that "The County has received confirmation that you had no military time in August 2007. Based upon information gathered, the County is considering disciplinary action up to and including discharge." (November 8, 2007 Hearing Notice; attached as Exhibit K to Defendants' Motion and Exhibit EE to Plaintiff's

-15-

Response)

A Loudermill hearing was held on November 29, 2007 and conducted by Karlyn
Semlow, the Human Resources Department Coordinator for Macomb County.  (MERC Hearing,
p. 29; attached as Exhibit Q to Defendants' Motion)  Plaintiff did not appear with a union
representative, but she was accompanied by an individual from the military.  (MERC Hearing, p.
36, attached as Exhibit Q to Defendants' Motion; Affidavit of James. D. Ratliff, ¶ 8; attached as
Exhibit OO to Plaintiff's Response)

At the subsequent MERC hearing, Semlow testified about the November 29, 2007
Loudermill Hearing.  In that testimony, Semlow asserted that she asked plaintiff about a span of
dates from August 13, 2007 through August 31, 2007 and plaintiff indicated that she was on a
military leave of absence during that period, but that she did not work each day and does not
know which days she worked for the military and which days she called in sick.  (MERC
Hearing, p. 39; attached as Exhibit Q to Defendants' Motion)  Semlow further testified that,
during the hearing, plaintiff was given credit for some dates listed in the Loudermill letter,
including the dates that she said her son was sick.  (MERC Hearing, p. 45; attached as Exhibit Q
to Defendants' Motion)  According to Semlow, she did not know that plaintiff had been granted
FMLA leave while conducting the hearing, but that such information would have been irrelevant
anyway as plaintiff was being investigated for stating she was on military leave.  (MERC
Hearing, pp. 52-53; attached as Exhibit Q to Defendants' Motion)  Semlow also testified that any
dates truly in question were removed from the discipline letter.  (MERC Hearing, p. 53; attached
as Exhibit Q to Defendants' Motion)  Semlow further testified that plaintiff acknowledged
during the hearing that she had not attended military training in August.  (MERC Hearing, pp.
56-57; attached as Exhibit Q to Defendants' Motion)  After the hearing, Semlow confirmed with
the military that, if plaintiff did not attend the scheduled military training, then plaintiff was
obligated to report back to her employer.  (MERC Hearing, p. 42; attached as Exhibit Q to

-16-

Defendants' Motion)

The military representative who accompanied plaintiff to the Loudermill hearing, Sgt. James D. Ratliff, also testified at the subsequent MERC hearing.  In that testimony, Sgt. Ratliff stated that, during the Loudermill hearing, plaintiff stated that she was protected under the FMLA for the dates in question and she told the County that she missed the military drills because her son was sick.  (MERC Hearing, pp. 52-53, 58; attached as Exhibit HH to Plaintiff's Response)  Sgt. Ratliff also described, in an affidavit, what he observed during the hearing:

> At the Loudermill hearing, Sgt. Peltier was asked to explain which dates she attended military drills.  She was asked why she did not attend her scheduled makeup military drills.  As appropriately expressed, Sgt. Peltier explained her son was sick.  She told them she contacted the unit and the county to inform both that her son was ill.  Sgt. Peltier explained that she was still protected under the Family Medical Leave Act.  At the time the military had her Family Medical Leave form and viewed her absence as legitimate due to her son's condition. Following her response, the officials asking the questions were dismissive and appeared to have a specific agenda.  In my opinion, they were in no way looking to discuss anything; they just wanted short concise answers to their questions.

(Affidavit of James. D. Ratliff, ¶ 9; attached as Exhibit OO to Plaintiff's Response)  Plaintiff's statements in her affidavit are similar to Ratliff's testimony and affidavit.  (Plaintiff's Affidavit, ¶ 35)

On December 14, 2007, plaintiff emailed the Board of Commissioners and informed them that plaintiff had made a complaint with the Employer Support of The Guard and Reserve (ESGR) that her rights under the USERRA had been violated.  (Plaintiff's Affidavit, ¶ 37; Email, attached as Exhibit 12 to Plaintiff's Affidavit)  Soon after, the Ombudsman with the ESGR issued a report finding that the County's policy of requiring employees to request a leave of absence prior to taking military leave was contrary to USERRA and that the County violated USERRA by disapproving plaintiff's leave request.  (December 17, 2007 Letter; attached as Exhibit AA to Plaintiff's Response)  Similarly, on January 8, 2007, plaintiff filed a complaint

against Seidelman with Human Resources.  (Plaintiff's Affidavit, ¶ 38)

In a letter dated January 10, 2008 to plaintiff from Seidelman, plaintiff was notified of a suspension.  The letter first provided that: "The County has conducted an investigation and concluded that the dates listed below are unexcused absences, in which you indicated you were on military duty and the military confirmed you did not serve on those dates."  The specific dates listed were July 14, 15 and 17, August 13-17, 20-21, 23-27 and 31, September 8-9, and October 6, and 9-11 of 2007.  The letter further stated that:

> Based on this information, you were in a no call no show status for an extended period of time and that you have been less than truthful with the Juvenile Justice Center regarding you absences from work.  Based on these issues and your prior disciplinary record you are placed on any unpaid disciplinary suspension for 15 days beginning on January 11, 2008.  You are to return to work on January 31, 2008.

(January 10, 2008 Letter; attached as Exhibit M to Defendants' Motion)

Plaintiff was scheduled to return to work on January 31, 2008, following her suspension, but she did not work that date.  According to the Attendance Notice for that date, plaintiff called in and said she would not be in while also refusing to give a reason why; instead, only stating that the administration would know why.  (Attendance Notice for January 31, 2008; attached as part of Exhibit OO to Defendants' Motion)  Plaintiff was also absent from work, tardy or left early on February 1, 5, 7-11, 17, 24 and 27-29, as well as March 3-4 and 6-10 of 2008.  (Attendance Notices for February 2008 and March 2008; attached as part of Exhibit OO to Defendants' Motion)  In addition to stating that the administration would know why she could not work, plaintiff is also described as missing work because of a lack of child care, taking her son to the doctor, illness/nerves, stress, car trouble, sickness, and stress and harassment due to the JJC.  Additionally, plaintiff is stated to have not called in at all on some occasions.  (Attendance Notices for February 2008 and March 2008; attached as part of Exhibit OO to Defendants' Motion)

-18-

Plaintiff does not dispute that she missed numerous days of work following the suspension, but she does assert that she had justification for missing some time and that she tried to accommodate the JJC.  For example, as stated in her testimony during the MERC hearing, after talking with Commissioner Sarah Roberts about plaintiff's difficulties in affording child care, plaintiff followed Roberts' suggestion to have a nun Roberts knew take care of plaintiff. Unfortunately, the nun was in the hospital with pneumonia and could not watch plaintiff's son. (MERC Hearing, pp. 13-14; attached as Exhibit L to Plaintiff's Response)  Similarly, on Tuesday, January 29, 2008, plaintiff sent in a request for "approved dock time" for the upcoming Thursday and Friday as she had to remain home to care for her son.  The request was denied by Assistant Director Emerick because he could not approve non-paid time off unless plaintiff qualified for a leave of absence.  (January 28, 2008 emails; attached as Exhibit QQ to Plaintiff's Response)

In a letter dated March 5, 2008, Seidelman wrote plaintiff and stated that a Loudermill Hearing had been scheduled in order to "discuss allegations of excessive and unexcused absences.  The letter also noted that plaintiff had previously been suspended and that, following her suspension, she was absent on January 31, February 1, 5, 9, 11, 17, 24, 27-29, and March 3-4 and 6-10 of 2008.  The letter further noted that the County was "considering disciplinary action up to and including discharge."  (March 5, 2008 Letter; attached as Exhibit PP to Defendants' Motion and Exhibit DD to Plaintiff's Response)

In a letter dated March 10, 2008, Assistant Director Emerick informed plaintiff that an employee must apply for a leave of absence if the employee is absent for six or more days.  The letter also stated that "It has been determined that you MUST [sic] provide medical documentation to support absenteeism from February 27, 2008 to present."  Plaintiff was also told to complete the attached form by March 14, 2008.  (March 10, 2008 Letter; attached as Exhibit LL to Plaintiff's Response)

-19-

Plaintiff subsequently waived her right to a formal hearing. (March 17, 2008 Letter; attached as Exhibit QQ to Defendants' Motion)

In a letter dated March 19, 2008, plaintiff was discharged. The reasons given were excessive and unexcused absences. Seidelman also noted plaintiff's prior disciplinary record. (March 19, 2008 Letter; attached as Exhibit N to Defendants' Motion and as part of Exhibit MM to Plaintiff's Response)

After her termination, plaintiff filed two grievances under the collective bargaining agreement. The first grievance was based on plaintiff's suspension while the second grievance was based on plaintiff's discharge on March 19, 2008. The grievances were subsequently combined, an arbitrator was chosen, and hearings were conducted on June 18, 2009, September 14, 2009 and January 29, 2010. Plaintiff, through her union, was represented by counsel, presented testimony, called witnesses and appeared at arbitration. On March 25, 2010, the Arbitrator found in favor of defendants. (Arbitration Decision; attached as Exhibit RR to Defendants' Motion) Plaintiff subsequently brought MERC charges against her union arising from its representation of plaintiff during arbitration. (MERC Charges; attached as Exhibit PP to Plaintiff's Response)

## III. Standard of Review

Defendants all move for summary judgment on the basis that there is no genuine dispute as to any issue of material fact. Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Moreover, in deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial

Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

     **A. FMLA Claims**

     The FMLA's central provision guarantees eligible employees twelve weeks of unpaid leave in a twelve-month period following certain events: a disabling health problem; a family member's serious illness; or the arrival of a new son or daughter. 29 U.S.C. § 2612(a)(1). During the mandatory twelve weeks, the employer must maintain the employee's group health coverage. § 2614(c)(1). Leave must be granted, when "medically necessary," on an intermittent or part-time basis. § 2612(b)(1). Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent. § 2614(a)(1).

     "Congress enacted the FMLA because, among other reasons, 'there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods.'" Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003) (quoting 29 U.S.C. § 2601(a)(4). "The FMLA 'accommodates the important societal interest in

-21-

assisting families by establishing minimum labor standard[s] for leave.'" <u>Cavin</u>, 346 at 719

(quoting H.R.Rep. No. 103-8(I), 103d Cong., 1st Sess.1993, at *21).

Plaintiff raises a number of claims under the FMLA and "notice pleading does not box

plaintiffs into one theory or the other at the complaint stage of an FMLA action." <u>Wysong v.</u>

<u>Dow Chem. Co.</u>, 503 F.3d 441, 446 (6th Cir. 2007). The Sixth Circuit recognizes two theories

for recovery under the FMLA: "the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and

the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2)." <u>Wysong</u>, 503 F.3d at 446. <u>See also</u>

<u>Bryson v. Regis Corp.</u>, 498 F.3d 561, 570 (6th Cir. 2007) (stating that the Sixth Circuit

recognizes two distinct theories of wrongdoing under the FMLA. The "interference" theory

imposes liability for interfering with or denying an employee's exercise of FMLA rights while

the "retaliation" or "discrimination" theory prohibits an employer from discharging an employee

for opposing any practice made unlawful by the FMLA). However, the same conduct can form

the basis for a claim under both theories. <u>Wysong</u>, 503 F.3d at 447 n. 2. Such is the case here

and the parties have framed the claims in terms of interference and retaliation. Each theory will

be addressed in turn and, for the reasons discussed below, this court finds that defendants'

motion for summary judgment should be granted.

### 1. Interference Claim

Plaintiff first argues that defendants unlawfully interfered with her FMLA rights. The

FMLA makes it illegal for an employer to "interfere with, restrain, or deny the exercise of or the

attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To prove a

prima facie case of interference, a plaintiff must show that: "(1) [she] is an '[e]ligible employee';

(2) the defendant is an '[e]mployer'; (3) the employee was entitled to leave under the FMLA; (4)

the employee gave the employer notice of [her] intention to take leave; and (5) the employer

denied the employee FMLA benefits to which [she] was entitled." <u>Wysong</u>, 503 F.3d at 447

(quoting <u>Cavin</u>, 346 F.3d 713, 719 (6th Cir. 2003)) (citations omitted) (second and third

-22-

alterations in original).

Regarding that final element, "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." Wysong, 503 F.3d at 447. Put another way, in the fifth element of an interference claim, the employer must "somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations." Wysong, 503 F.3d at 447 (internal quotation omitted). Therefore, even if an employee has proven, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying her exercise of FMLA rights, § 2617 provides no relief unless the employee has been prejudiced by the violation. Ragsdale, 535 U.S. at 89. As stated by the United States Supreme Court in Ragsdale:

> § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

Ragsdale, 535 U.S. at 89. See also Allen v. Butler County Comm'rs, 331 Fed. Appx. 389, 394 (6th Cir. 2009) (holding that "the mere occurrence of interference with an employee's FMLA rights is not a per se FMLA violation." and that the employee must show prejudice).

Here, plaintiff makes a number of allegations in her complaint and response with respect to her interference claim. Among those allegations are claims that defendants violated the FMLA by failing to provide plaintiff with information about the FMLA as required, answer plaintiff's questions, follow the statutory requirements in processing her leave, or timely grant her request for leave. However, even assuming for the sake of argument that such actions occurred and that they constituted violations of the FMLA, plaintiff would still have to show that she was prejudiced by those violations. See Ragsdale, 535 U.S. at 89; Allen, 331 Fed. Appx. at

394.

Here, it is undisputed in this case that plaintiff was eventually granted intermittent leave pursuant to the FMLA[5] and, consequently, it appears that any delay did not prejudice plaintiff. Plaintiff argues that she was prejudiced by the above interference because, if defendants had properly complied with the statute, she would have been eligible for more leave and she would have worked a part-time schedule. However, there is simply no empirical or evidentiary basis for those assertions. Therefore, even if defendants did technically violate the FMLA, no genuine dispute exists with respect to prejudice and defendants are entitled to summary judgment on that portion of her FMLA interference claim.[6]

### 2. Retaliation Claim

Plaintiff also claims that the defendants' actions constitute unlawful retaliation. The FMLA makes it illegal for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA.]" 29 U.S.C. § 2615(a)(2). In the absence of direct evidence of unlawful conduct, FMLA retaliation claims proceed by way of the burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas

---

[5]May 26, 2007 Request for Leave of Absence; attached as Exhibits U and X to Defendants' Motion and as part of Exhibit S to Plaintiff's Response.

[6]Plaintiff does assert that defendants took adverse actions and disciplined plaintiff as part of her interference claim. If true, those allegations would clearly constitute prejudice for purposes of an FMLA claim. Nevertheless, the alleged adverse actions and discipline are also the basis for plaintiff's FMLA retaliation claim and defendants are entitled to summary judgment on that portion of her interference claim for the same reasons discussed below with respect to plaintiff's FMLA retaliation claim.

-24-

inquiry." <u>Cline v. Catholic Diocese of Toledo</u>, 206 F.3d 651, 661 (6th Cir. 2000).[7]

Under the familiar burden-shifting <u>McDonnell Douglas</u> framework, a plaintiff may use circumstantial evidence to show that the employer acted with a retaliatory motive as part of her prima facie case. <u>Daugherty v. Sajar Plastics, Inc.</u>, 544 F.3d 696, 707 (6th Cir. 2008); <u>see also</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To prove a prima facie case of retaliation, the plaintiff must show that: (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between the exercise of the right and the adverse employment decision. <u>Skrjanc v. Great Lakes Power Serv.</u>, 272 F.3d 309, 314 (6th Cir. 2001). In proving a causal connection between the exercise of a protected activity and an adverse employment action, a plaintiff need not prove that the exercise of FMLA rights was the sole reason for the adverse employment action. <u>Gibson v. City of Louisville</u>, 336 F.3d 511, 512-513 (6th Cir. 2003). Instead, plaintiffs must show "that requesting FMLA leave was only 'a determining and motivating factor'" behind the adverse employment action. <u>Gibson</u>, 336 F.3d at 514; <u>Heady v. United States Enrichment Corp.</u>, 146 Fed. Appx. 766, 769-770 (6th Cir. 2005) (stating that, on summary judgment, plaintiff "must provide sufficient evidence to show that the exercise of her FMLA rights was a motivating factor in her discharge"). Employers may not "use the taking of FMLA leave as a negative factor in employment actions." <u>Daugherty</u>, 544 F.3d at 707 (citation omitted). The employer's legitimate, non-discriminatory reason for firing should not be considered in determining whether an employee has established a prima facie case. <u>See</u> <u>Cline</u>, 206 F.3d at 660-61 ("[W]hen assessing whether a plaintiff has met her employer's legitimate

---

[7]If direct evidence of discrimination exists - "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" - the court does not need to proceed with a <u>McDonnell Douglas</u> analysis. <u>Daugherty</u>, 544 F.3d at 707 (citation omitted). Plaintiff does not argue, nor does appear, that there is any direct evidence of discrimination in this case.

-25-

expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.")

If the plaintiff makes a prima facie showing, "the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action" and then "shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." Bryson, 498 F.3d at 570. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 526 (6th Cir. 2008) (quoting Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000)). The "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants ... did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." Mickey, 516 F.3d at 526 (quoting Braithwaite v. Timken Co., 258 F.3d 488, 493-94 (6th Cir. 2001)). Even so, the ultimate "burden of persuasion remains with the plaintiff at all times." Mickey, 516 F.3d at 526 (quoting Weigel v. Baptist Hosp. of East Tennessee, 302 F.3d 367, 377-378 (6th Cir. 2002)).

Here, defendants argue that they are entitled to summary judgment because plaintiff cannot prove a prima facie case of retaliation. It is undisputed that the first two elements of a prima facie case exist in this matter as plaintiff clearly availed herself of a protected right under the FMLA and she suffered adversely affected by employment decisions when defendants reprimanded her, suspended her and terminated her. Defendants do, however, argue that plaintiff cannot show a causal connection between the exercise of her protected right and the employment decisions. Defendants also argue that, to the extent plaintiff could show a causal connection, they had legitimate, non-discriminatory reasons for the adverse employment actions and those

-26-

reasons were clearly not a pretext.  As described above, the adverse employment actions in this case included a verbal reprimand, a written reprimand, a suspension, and a termination.

### a. Verbal Reprimand

With respect to the verbal reprimand, a genuine dispute exists regarding the causal connection element of plaintiff's prima facie case.  The verbal reprimand was issued against plaintiff through a letter dated September 11, 2007 and there is no connection between that reprimand and plaintiff's FMLA leave on the face of that letter.[8]  The letter docks plaintiff's pay for a number of days that plaintiff did not work and there is no mention of the FMLA.  Moreover, the Attendance Notices for the majority of the dates identified in the letter provide that plaintiff missed work for reasons other than FMLA leave, including sickness, military leave, or no reason at all.[9]  However, the Attendance Notices for September 1, 2007 and September 7, 2007 do provide that plaintiff missed work due to a family illness and her son being sick respectively, and such absences are, at the very least, arguably covered by plaintiff's FMLA leave.  Plaintiff can also point to the delay in granting her FMLA leave and the May 22, 2007 complaint she filed with Herppich over her FMLA leave[10] as evidence of the connection between her protected activity and the verbal reprimand.  Additionally, the verbal reprimand was issued a month and a half after plaintiff's leave was granted.  Given that temporal proximity, as well as the possibility that plaintiff was reprimanded for days she was on leave, a rational trier of fact could conclude that plaintiff has shown a causal connection between her protected activity and the verbal reprimand.

As discussed above, if plaintiff is able to demonstrate her prima facie case, the burden

---

[8]Verbal Reprimand and Attendance Notices, attached as Exhibit K Plaintiff's Response.

[9]Verbal Reprimand and Attendance Notices, attached as Exhibit K Plaintiff's Response.

[10]Emails; attached as Exhibit 5 to Plaintiff's Affidavit.

shifts to defendant to offer a legitimate, non-discriminatory reason for the adverse employment action and then back to plaintiff to show that defendants' proffered reason is a pretext for unlawful discrimination. Here, the record demonstrates a legitimate and non-pretextual reason for the verbal reprimand and defendants are entitled to summary judgment. Plaintiff broadly asserts that she was disciplined for dates she was on leave[11], but, outside of the two possible incidences identified by the court above, that does not appear to be the case. Plaintiff does not identify anywhere in her complaint, response or affidavit, a single specific date for which she was disciplined despite being on leave. The Attendance Notices offer reasons other than leave for plaintiff's absences, with the most common reason being sickness. Calling in sick without more information is insufficient to establish that plaintiff is on FMLA leave as the FMLA leave does not encompass all absences, only those for the qualifying reason of plaintiff's son's illness. Plaintiff does assert that defendants' call-in system was insufficient to describe why she missed work and, consequently, the Attendance Notices cannot be relied upon. However, plaintiff provides no evidence in support of that assertion and, as discussed above, fails to identify any specific dates for which she was disciplined despite being on leave.

The FMLA does not protect an employee from being disciplined for reasons unrelated to her FMLA leave. Arban v. West Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003). An employee may lawfully be disciplined after exercising her right to FMLA leave if the discipline would have occurred regardless of the employee's request for or taking of FMLA leave. Arban, 345 F.3d at 401. See also Edgar v. JAC Products, Inc., 443 F.3d 501, 508 (6th Cir. 2006) ("[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."). In this case, the large number of absences plaintiff accumulated because of reasons

---

[11]Plaintiff's Affidavit, ¶ 45.

2:10-cv-10796-GER-LJM   Doc # 63   Filed 03/25/11   Pg 29 of 40   Pg ID 1701

unrelated to her FMLA leave during the applicable pay period are clearly a legitimate, non-discriminatory and non-pretextual reason for the verbal reprimand. Accordingly, no genuine dispute exists with respect to the verbal reprimand portion of plaintiff's claim and defendants are entitled to summary judgment.

### b. Written Reprimand

With respect to the written reprimand, no genuine dispute exists regarding the causal connection element of plaintiff's prima facie case and defendants are entitled to summary judgment on that portion of plaintiff's FMLA retaliation claim. The written reprimand was issued against plaintiff in a letter dated September 17, 2007, and there is no connection to the FMLA on the face of the letter.[12] Instead, the letter states that plaintiff was being reprimanded for having ten unexcused absences in a three month period. Moreover, the Attendance Notices for the dates identified in the letter provide that plaintiff called in sick or that a relative called in sick for plaintiff on those dates. Plaintiff argues that she was on FMLA leave for at least some of those dates, but she provides no support for that argument. While plaintiff was granted FMLA leave during the relevant period, she only had an intermittent leave and not all absences are covered. Only those absences for the qualifying reason of her son's illness were covered and the only evidence in this case demonstrates that plaintiff was not absent for the qualifying reason on the relevant dates. As discussed above, plaintiff argues that the Attendance Notices cannot be trusted due to a deficient call-in process, but she fails to provide any support for that argument or identify any actual leave days she was disciplined for in the written reprimand.

Plaintiff had previously filed a complaints regarding the processing of her FMLA leave and the written reprimand was issued a month and a half after her FMLA leave was granted.

_____

[12]Written Reprimand and Attendance Notices, attached as part of Exhibit K Plaintiff's Response.

-29-

However, even given that possible temporal proximity, plaintiff offers no other evidence that the written reprimand was issued because of her FMLA leave and a temporal proximity is usually insufficient on its own.  See Vereecke v. Huron Valley School. Dist., 609 F.3d 392, 401 (6th Cir. 2010) ( "Indeed, we have rarely found a retaliatory motive based only on temporal proximity."). See also Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008) ("in those limited number of cases ... where an employer fires an employee *immediately* after learning of a protected activity, we can infer a causal connection between the two actions, even if [the employee] ha[s] not presented other evidence of retaliation." (emphasis added)).

It is a low burden to prove a prima facie case of FMLA retaliation.  Still, plaintiff has failed to demonstrate that a genuine dispute exists with respect to whether her FMLA requests or leave were a motivating factor in the written reprimand.  Moreover, even if plaintiff could make such a showing, the evidence regarding her repeated absences and the absence of any suggestion that she was on leave during any of the days identified in the written reprimand establishes that defendants had a legitimate, non-pretextual reason, unrelated to the exercise of FMLA rights, for issuing the written reprimand.  Therefore, on either basis, defendants are entitled to summary judgment.

### c. Suspension

With respect to plaintiff's suspension, a genuine dispute exists as to the causal connection element of plaintiff's prima facie case.  The suspension letter[13] identifies a number of dates for which plaintiff was being disciplined, but both plaintiff and defendant narrow their arguments to the period of August 13, 2007 to August 31, 2007.  As argued by defendant, and as stated in the suspension letter, plaintiff was suspended because she claimed to be on military leave for those dates while not actually attending any training.  Plaintiff, on the other hand, argues that she was

---

[13]January 10, 2008 Letter; attached as Exhibit M to Defendants' Motion.

on FMLA leave during those dates, she repeatedly informed defendants of that fact, and she was suspended for missing work on days she exercised her FMLA life.  In support of that argument, plaintiff provides her affidavit stating that she called in every single day to say she was on leave and that she informed Semlow that she was on FMLA leave, rather than military leave, at the Loudermill hearing for another employee.[14]  Sgt. Ratliff's affidavit corroborates plaintiff's statements that she also claimed FMLA leave during her Loudermill hearing[15] and plaintiff was also sent a letter[16] denying her FMLA leave for the period of August 13, 2007 to August 31, 2007, despite the fact that she never specifically requested FMLA leave for that period and had already been granted an intermittent leave that would encompass that time period.  Given that evidence, plaintiff has demonstrated that a genuine dispute exists with respect to the causal connection element of plaintiff's prima facie case.

As discussed above, if plaintiff is able to demonstrate her prima facie case, the burden shifts to defendant to offer a legitimate, non-discriminatory reason for the adverse employment action and then back to plaintiff to show that defendants' proffered reason is a pretext for unlawful discrimination.  Here, no genuine dispute exists with respect to the reason for the suspension and defendants are therefore entitled to summary judgment.

The suspension letter states that plaintiff was being disciplined because she claimed to be on military leave for certain dates and did not actually attend military leave on those dates.  As stated in the Attendance Notices for August 12, 2007 and undisputed by plaintiff, she called in on that date and stated she would be on military leave for the next three weeks.  Accounts differ

---

[14]Plaintiff's Affidavit, ¶¶ 26-27.

[15]MERC Hearing, pp. 52-53, 58, attached as Exhibit HH to Plaintiff's Response Affidavit of James. D. Ratliff, ¶ 9, attached as Exhibit OO to Plaintiff's Response;

[16]September 11, 2007 Letter; attached as Exhibit T to Plaintiff's Response.

as to what occurred during the next three weeks; with the Attendance Notices[17] providing that plaintiff either failed to call in or called in and said she was on military leave and plaintiff's affidavit[18] providing that she called in every single day to state that she was unable to attend military training because her son was ill, as she was told to do.  However, what is undisputed is that plaintiff both failed to attend military training during that period and subsequently applied for a leave of absence on account of military training for the same dates on October 15, 2007.[19]

Plaintiff appears to argue that she is entitled to miss work, and be protected from discipline for missing work under USERRA, simply because she was scheduled for military training and that, if she missed that training, it is between her and the military.  However, that argument is unsupported by military policy[20] or logic.  Plaintiff knew that she had not attended the military training and yet she still sought military leave for the dates she did not attend, either in an attempt to deceive defendants or because of a mistaken belief that she should still receive such leave.  After discovering that plaintiff improperly sought such leave, defendants suspended her for fifteen days.  They clearly did so regardless of plaintiff's FMLA leave and for the legitimate, non-pretextual reason that plaintiff had misled them.  As discussed above, the FMLA does not protect an employee from being disciplined for reasons unrelated to her FMLA leave.  Arban, 345 F.3d at 401.  That is what happened here and no genuine dispute exists with respect to plaintiff's FMLA retaliation claim based on her suspension.  Consequently, defendants are entitled to summary judgment on that claim.

---

[17]Attendance Notices for August 2007; attached as Exhibit LL to Defendants' Motion and Exhibit P to Plaintiff's Response.

[18]Plaintiff's Affidavit, ¶¶ 26-37.

[19]October 15, 2007 Request for Leave of Absence; attached as Exhibit JJ to Defendants' Motion and part of Exhibit U to Plaintiff's Response.

[20]MERC Hearing, p. 42; attached as Exhibit Q to Defendants' Motion.

### d. Termination

With respect to plaintiff's termination, no genuine dispute exists regarding the causal connection element of plaintiff's prima facie case and defendants are entitled to summary judgment on that portion of plaintiff's FMLA claim.  Plaintiff's discharge letter[21] clearly provides that plaintiff was being discharged for unexcused absences that occurred in January, February and March of 2008 and plaintiff does not dispute that she missed works on those dates. Moreover, plaintiff's FMLA leave had long since expired by the time of her discharge and there is simply no evidence of any causal connection between plaintiff's FMLA leave and her termination.  Plaintiff had made a complaint[22] regarding the FMLA as recently as December of 2007, but that complaint alone is insufficient to demonstrate a causal connection.  Therefore, defendants are entitled to summary judgment on that portion of plaintiff's FMLA claim as well.

To the extent plaintiff can establish that a genuine dispute exists with respect to a causal connection between plaintiff's FMLA leave and her termination, defendants would still be entitled to summary judgment as they clearly had a legitimate reason to terminate plaintiff based on her numerous unexcused absences[23] and plaintiff presents no evidence even suggesting that such reason was a pretext.  As no genuine dispute exists as to that issue, defendants are entitled to summary judgment.

### B. USERRA Claims

The purpose of USERRA is to encourage non-career military service, minimize

---

[21]March 19, 2008 Letter; attached as Exhibit N to Defendants' Motion and as part of Exhibit MM to Plaintiff's Response.

[22]Plaintiff's Affidavit, ¶ 37; Email, attached as Exhibit 12 to Plaintiff's Affidavit.

[23]Attendance Notice for January 31, 2008, attached as part of Exhibit OO to Defendants' Motion; Attendance Notices for February 2008 and March 2008; attached as part of Exhibit OO to Defendants' Motion.

disruption based on this service, and prevent discrimination against service members. 38 U.S.C.

§ 4301. To this end, USERRA provides that:

> A person who is a member of, applies to be a member of, performs, has
> performed, applies to perform, or has an obligation to perform service in a
> uniformed service shall not be denied initial employment, reemployment,
> retention in employment, promotion, or any benefit of employment by an
> employer on the basis of that membership, application for membership,
> performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). It further provides that an employer "may not discriminate in employment

against or take any adverse employment action against any person because such person ... has

taken an action to enforce a protection afforded" under USERRA. 38 U.S.C. § 4311(b). The

term "uniformed service" means in pertinent part the Armed Forces when engaged in active duty

for training. 38 U.S.C. § 4303(16).

Here, plaintiff contends that the retaliated against her and interfered with her rights under

USERRA because of plaintiff's attempts to get military leave and plaintiff's status as a member

of the military. For the reasons discussed below, defendants are entitled to summary judgment

on those claims.

**1. Interference**

The exact contours of plaintiff's interference claim are unclear as she failed to address her

claim in her response and, instead, relies solely on the finding of the Employer Support of The

Guard and Reserve (ESGR) that defendants violated USERRA. The ESGR did find that

defendants violated USERRA by, among other things, requiring plaintiff to request leave prior to

going to military training.[24] As argued by plaintiff, the applicable regulations provide that an

employee is not required to ask for or get her employer's permission to leave to perform service

in the uniformed services. 20 C.F.R. § 1002.87.

---

[24]December 17, 2007 Letter; attached as Exhibit AA to Plaintiff's Response.

-34-

However, even if defendants violated USERRA, plaintiff would still have to show that she suffered an injury because of that violation in order to recover damages.  Under Section 4323(d)(1), "[t]he court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter." 38 U.S.C. § 4323(d) (emphasis added). The "by reason of" language under USERRA is the same as that used in 29 U.S.C. § 2617 of the FMLA.  Moreover, an actual injury is required for purposes of standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that the burden to show standing is not a mere pleading requirement, "but rather an indispensable part of the plaintiff's case" and that, as part of that showing, a plaintiff must demonstrate that he has suffered an injury in fact which is actual, concrete, and particularized).

Given the need for an actual injury, any interference claim plaintiff brings under USERRA would track her retaliation claim and defendants would be entitled to summary judgment for the same reasons discussed below.

**2. Retaliation**

The retaliation provision of USERRA, 38 U.S.C. § 4311(b), states that:

(b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

(c) An employer shall be considered to have engaged in actions prohibited-

* * *

(2) under subsection (b), if the person's (A) action to enforce a protection afforded

-35-

any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, or (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

"In order to make out a USERRA retaliation claim, an employee bears the initial burden of showing, by a preponderance of the evidence, that his protected status was a motivating factor in the adverse employment action." Escher v. BWXT Y-12, LLC, 627 F.3d 1020, 1026 (6th Cir. 2010) (citing Hance v. Norfolk So. Ry. Co., 571 F.3d 511, 517-18 (6th Cir. 2009) (per curiam)). "Protected status is a motivating factor if a truthful employer would list it, if asked, as one of the reasons for its decision." Escher, 627 F.3d at 1026. Discriminatory motivation can be inferred from a variety of considerations, including: (1) proximity in time between the employee's military activity and the adverse employment action, (2) inconsistencies between the proffered reason and other actions of the employer, (3) an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and (4) disparate treatment of certain employees compared to other employees with similar work records or offenses. Escher, 627 F.3d at 1026 (citations omitted). Additionally, to establish actionable retaliation, the relevant decision maker, not merely some agent of the defendant, must possess knowledge of the plaintiff's protected activity. Mulhall v. Ashcroft, 287 F.3d 543, 551-52 (6th Cir. 2002). "If the plaintiff meets this burden, 'the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason.'" Escher, 627 F.3d at 1026 (quoting Hance, 571 F.3d at 518.

In her USERRA retaliation claim, plaintiff alleges that defendants unlawfully reprimanded, suspended and terminated plaintiff because of plaintiff's military status and

-36-

attempts to take military leave. Each of those claims will be addressed and turn and, for the reasons, discussed below, this court finds that defendants should be granted summary judgment on them.

### a. Verbal Reprimand

With respect to the verbal reprimand, plaintiff may be able to show that her protected status was a motivating factor in the adverse employment action, but defendants would still be entitled to summary judgment. As discussed above, plaintiff was verbally reprimanded for missing work on a number of dates, including August 31, 2007.[25] However, the Attendance Notice for August 31, 2007 provides that plaintiff called in and stated she could not work because she was on military leave.[26] Additionally, the verbal reprimand was issued only a couple of weeks after the period of time plaintiff sought military leave for. Nevertheless, it is undisputed that plaintiff did not actually attend military training on August 31, 2007 and defendants knew, either from plaintiff herself[27] or plaintiff's military commander[28], that plaintiff had not attended military training at the time they issued the verbal reprimand. Moreover, the majority of dates identified in the verbal reprimand were completely unrelated to plaintiff's military service and it is undisputed that plaintiff missed work on those dates. Given those absences, as well as the fact that plaintiff did not attend military training on August 31, 2007, a rational trier of fact would conclude that defendants verbally reprimanded plaintiff for a valid reason and that they would have done so even if plaintiff had not been in the military. Accordingly, defendants are entitled to summary judgment on plaintiff's USERRA claim based

---

[25]Verbal Reprimand and Attendance Notices, attached as Exhibit K Plaintiff's Response.

[26]Id.

[27]Plaintiff's Affidavit, ¶ 26.

[28]September 11, 2007 Memorandum; attached as Exhibit X to Plaintiff's Response.

-37-

on the verbal reprimand.

### b. Written Reprimand

Similarly, defendants are entitled to summary judgment on plaintiff's USERRA retaliation claim based on the written reprimand[29] she received. Outside of a temporal proximity to the dates plaintiff sought military leave for, there is no evidence suggesting that the written reprimand was in any way based on plaintiff's military status. Additionally, it is undisputed that plaintiff did not work in the dates identified in the written reprimand or that she did not attend military training on those dates.[30] Therefore, no genuine dispute exists with respect to defendants' motives in issuing the written reprimand and they are entitled to summary judgment on that claim.

### c. Suspension

While plaintiff has a stronger case on this claim, defendants are also entitled to summary judgment on plaintiff's USERRA retaliation claim to the extent it is based on her suspension. As described above, defendants required that plaintiff seek military leave prior to missing work to go to military training, in violation of the applicable regulation[31], and they suspended plaintiff in relation to dates she was scheduled for military training[32]. Plaintiff also identified defendant Herppich as making hostile comments regarding the effect of plaintiff's military service on her employment at the JJC[33] and highlights the fact that she had already made complaints alleging

---

[29]Written Reprimand and Attendance Notices, attached as part of Exhibit K Plaintiff's Response.

[30]Written Reprimand and Attendance Notices; attached as part of Exhibit K Plaintiff's Response.

[31]December 17, 2007 Letter; attached as Exhibit AA to Plaintiff's Response.

[32]January 10, 2008 Letter; attached as Exhibit M to Defendants' Motion.

[33]Plaintiff's Affidavit, ¶ 30; MERC Hearing, pp. 240-241.

that defendants violated USERRA when she was suspended[34].  However, as discussed above with respect to her FMLA retaliation claim, the evidence in this case clearly demonstrates that plaintiff was suspended for misleading defendants and not for requesting or taking military leave.   It is undisputed that, following the scheduled military training, plaintiff sought military leave for dates she had not attended military training.[35]  That is why defendants suspended her. Defendants' reasons constituted a valid basis for taking the adverse action and one they would have done irrespective of plaintiff's military status.  Accordingly, defendants are entitled to summary judgment on that portion of plaintiff's retaliation claim.

**d. Termination**

Defendants are entitled to summary judgment on plaintiff's USERRA retaliation claim based on her termination as well.  Following her return from suspension, plaintiff was absent from work on numerous occasions and those absences were not excused.[36]  Moreover, while plaintiff's retaliation claim is seemingly based on alleged lingering effects of her military service and her previous complaints regarding the handling of her military leave, her military service was over by the time she was discharged and there is no evidence connecting her termination to his military history.  Given that lack of evidence, in addition to plaintiff's numerous unexcused absences, no genuine dispute exists with respect to the reasons for plaintiff's discharge and defendants are entitled to summary judgment on plaintiff's USERRA retaliation claim based on her discharge.

---

[34]Plaintiff's Affidavit, ¶ 38; December 17, 2007 Letter; attached as Exhibit AA to Plaintiff's Response.

[35]October 15, 2007 Request for Leave of Absence; attached as Exhibit JJ to Defendants' Motion and part of Exhibit U to Plaintiff's Response.

[36]Attendance Notice for January 31, 2008, attached as part of Exhibit OO to Defendants' Motion; Attendance Notices for February 2008 and March 2008; attached as part of Exhibit OO to Defendants' Motion.

**V. Conclusion**

For the reasons discussed above, this court recommends that defendants' motion for summary judgment (D/E #44) be **GRANTED** and this case be closed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: March 25, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and Christina Peltier via the Court's ECF System and/or U. S. Mail on March 25, 2011.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan